## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

YANCEY, TRUSTEE, & ANOTHER, *v.* BLAKEMORE & OTHERS.

NOVEMBER 18, 1897.

Absent, Riely and Cardwell, JJ.

1. VENDOR'S LIEN—*Subsequent Alienations of Parcels—Order of Liability—Notice.*—A part of a tract of land subject to a vendor's lien is sold and conveyed by the original vendee to a sub-vendee, no lien being retained for the purchase price, though it was verbally agreed that there should be. The sub-vendee executes his bond to his immediate vendor who assigns it to the original vendor to whom the sub-vendee verbally agrees to pay it in discharge of the balance of the purchase money due by the original vendee. Subsequently the sub-vendee places a mortgage on the land so purchased by him, and discloses the fact to the mortgagee that he is indebted to the original vendor, but does not disclose the origin of the indebtedness, or that it is in anywise a lien on the land, or that it has been agreed that a lien should be retained for the debt.

Held:   The land retained by the original vendee is first liable for the balance of the vendor's lien. The mortgagee is not bound to enquire for evidence of secret equities between the other parties, and the recordation of the vendor's lien did not impose this duty upon him.

Argued at Staunton.   Decided at Richmond.

Appeal from a decree of the Circuit Court of Rockingham county pronounced April 19, 1897, in two chancery causes heard together, one under the style of *Blakemore* v. *Coyner*, and the other of *Cline* v. *Blakemore and others*, in each of which the appellants were defendants.

*Reversed.*

In the suit of *Blakemore* v. *Coyner and others,* the bill charges that a tract of 19 and a fraction acres of land had been sold by Wm. H. and Charles H. Blakemore to Coyner; that this was a parcel of a larger tract of 137 acres which the Blakemores had purchased of Noah Wine, upon the whole of which tract there was a vendor's lien for $3,000; that at the time of the sale to Coyner all of this vendor's lien had been discharged except a bond for $1,000, and that it was agreed between them and Coyner that Coyner should pay off this balance. The bill further charged that it was agreed that a vendor's lien should be retained in the deed made to Coyner, but that this had been omitted by oversight; that Coyner had executed his bond to them for $1,000, which stated on its face that a vendor's lien was retained in the deed of conveyance to secure the payment thereof; that this bond had been assigned by them to Sarah Cline; that Coyner had agreed to pay it to her, and had made sundry payments of interest to her on that account, but had paid no part of the principal. The bill sets out several conveyances that had been made by Coyner of the whole or part of the land which the Blakemores had conveyed to him, and, amongst others, a conveyance to Wm. L. Yancey, in trust, to secure $2,500 to the Baltimore Building & Loan Association. It is charged that this debt was founded upon an usurious consideration, that the whole of it is not due, and that the trustee has advertised the land for sale.

The bill prays that Wm. L. Yancey, trustee, and the Baltimore Building & Loan Association be enjoined from making sale of the property, that an account of liens on the lands be taken, showing their relative priorities, and that the bond of the complainant for $1,000 be established as a first lien on the tract of land sold by the complainants to Coyner.

The suit of *Cline* v. *Blakemore and others* was brought for the purpose of enforcing a vendor's lien on the tract of land sold by Noah Wine to the Blakemores. The bill sets out the origin of the debt, the fact that a vendor's lien was retained,

and numerous alienations of different parcels of the land to different parties. All of the alienees were made parties, and the complainant prayed for the enforcement of her vendor's lien on the land, and for all necessary and proper accounts.

*Yancey & Haas*, for the appellants.

*Winfield Liggett*, for the appellees.

HARRISON, J., delivered the opinion of the court.

The record shows that Noah Wine and wife conveyed to W. H. and Charles H. Blakemore a tract of 137 acres of land, part of the consideration being paid in cash, and a vendor's lien being retained on the face of the deed for the deferred instalments of purchase money, represented by three bonds for $1,000 each, two of which bonds were subsequently paid off in the hands of Wine, the vendor, while the third and last was by him assigned for value to one Sarah Cline. The Blakemores afterwards sold and conveyed to L. P. Coyner 19 acres, 2 roods, and 13 poles of said land; Coyner paying part of the purchase money in cash, and executing his bond to the Blakemores for $1,000, the residue of said purchase money. In this deed no lien was retained. Afterwards Coyner and wife, by deed of September 13, 1894, conveyed, together with other land, 10 acres of this 19-acre tract to W. L. Yancey, trustee, to secure a loan made by the Baltimore Building and Loan Association, he having previously conveyed portions of the tract to other parties.

The Blakemores having failed to pay their bond for $1,000 in the hands of Sarah Cline, assignee, the question presented is which land must be subjected first to its payment, that still owned and held by the Blakemores, or that which the Blakemores conveyed to Coyner. The appellant relies upon the rule which requires land subject to a vendor's lien or other encum-

brance, which is sold in parcels to different persons by successive alienations, to be subjected in the inverse order of such alienations, the land retained by the debtor being subject first of all. The appellant, therefore, contends that the portion of the 137 acres still unaliened and held by the Blakemores must first be subjected to the satisfaction of the vendor's lien before that portion of said land sold to Coyner, and by him conveyed to Yancey, trustee, can be so applied. On the other hand, the appellees insist that while no lien was expressly reserved in the conveyance from the Blakemores to Coyner to secure the $1,000 of purchase money due on the 19-acre tract, yet it was expressly agreed that it should be retained, and was omitted by mistake, and that, in pursuance of said agreement, the Coyner bond was turned over to Mrs. Cline, and that Coyner then and there undertook the payment of the Blakemore bond held by Mrs. Cline for a like amount, the payment of which should operate as an extinguishment of the Coyner bond to the Blakemores; of all of which they insist the appellant had notice.

The Circuit Court adopted the view of the appellees, and decreed that the land conveyed by the Blakemores to Coyner must be first subjected to the payment of the bond held by Sarah Cline, assignee, before subjecting that retained by the Blakemores at the date of their conveyance to Coyner.

In this we think the Circuit Court erred. Conceding that an equity constituting a vendor's lien could, as between the Blakemores and Coyner, be created by parol, about which we express no opinion, such an agreement could not affect the rights of the Baltimore Building & Loan Association, which is a subsequent purchaser for value, unless it had notice. The records do not disclose any equity in favor of the Blakemores, and the proof is not sufficient to charge the Loan Association with notice of their claim. The only witness by whom it is thus sought to affect the rights of the association is Coyner himself. He says on this point:

"I told Mr. Yancey I owed Mrs. Cline $1,000. I think she

had my bond to the Blakemores at this time. She also held Blakemore's bond for $1,000, secured by a vendor's lien on this same property. I think Mr. Yancey knew the Wine bond was a lien on this property. He knew that I owed Mrs. Cline $1,000. I told him I had given my note for it."

And on cross-examination he says:

"Q. 1. In your printed applications to the Baltimore Building and Loan Association for the loan of $2,500, secured by deed of trust, a copy of which is filed with these papers, didn't you state that there were no liens upon this property, except the lien to R. P. Harnsberger, receiver of the Campbell & Pence stock of goods?"

"Ans. No, I don't think I did. If I did, it was at the time I told Mr. Yancey of the Cline lien. Then Mr. Yancey remarked that I had a clear deed."

"Q. 2. Isn't this what you told Mr. Yancey: that the Blakemores had turned over your bond to them for $1,000 to Mrs. Sarah Cline, and that you had arranged it all with her?"

"Ans. Yes, that was the time I gave Mrs. Cline the $1,000 bond, my bond. I expect that was the time, and expected to get Blakemore's bond from Mrs. Cline."

All this occurred in connection with another and wholly different transaction, one year before the loan of the Building Association was made.

On the other hand, W. L. Yancey denies that he had notice of the equity set up by the Blakemores, saying on this point that he "was not told at the time, and did not know then, that the bond which Sarah Cline held against the Blakemores was the bond of the Blakemores to Noah Wine, and that the same had been assigned to Sarah Cline by the said Noah Wine, but merely supposed that the bond which Sarah Cline held was some personal obligation of the Blakemores, and did not know, and was not told by L. P. Coyner, or any one else, that it was for the balance due on the land."

This evidence is not sufficient to charge the Building Asso-

ciation with notice of the equity claimed by the Blakemores. Before it can be affected by any latent equity between the Blakemores and Coyner, the proof of notice of such claim must be clear and strong.

The appellant or its agent, Yancey, should have been clearly informed that the Cline bond was one of the Blakemore bonds secured by the vendor's lien; that Coyner had undertaken to pay it; and that it was intended to claim a lien for its payment by parol in favor of the Blakemores on the land conveyed by them to Coyner. These facts were never communicated in any way to Yancey. The most that can be said is that he was told that the Blakemores owed Mrs. Cline $1,000, which Coyner had agreed to pay, but nothing was said to disclose any connection between Mrs. Cline and the vendor's lien resting on the land, and nothing to suggest the equity now asserted by the Blakemores.

The court is further of opinion that the recorded vendor's lien, did not impose on the appellants the duty to inquire for evidence of any latent or secret equity which the record did not disclose. They had full knowledge when they made the loan to Coyner that there was an unsatisfied outstanding vendor's lien for $3,000 on the whole tract, including the 19 acres aliened by Blakemore to Coyner, and it was not material in whose hands the bonds representing that debt might be. There was nothing in the record to put the appellants on enquiry, or to suggest the existence of secret or unknown liens to their prejudice which might be disclosed by enquiry outside the record. They chose to take the risk of the security as the records disclosed its status, and the law does not impose any further risk upon them. *Cox* v. *Romine*, 9 Gratt. 27.

The decree of the Circuit Court must therefore be reversed, and the cause remanded for further proceedings to be had therein in accordance with the views expressed in this opinion.

*Reversed.*